No. 22-1446

_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

Matthew Haney as Trustee of
the Gooseberry Island Trust

Plaintiff/Appellant

v.

The Town of Mashpee; Town of Mashpee
Zoning Board of Appeals

Defendants/Appellees
`

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CASE No. 1:19-CV-10982-DJC

_____

PAUL REVERE, III,
I.D. No. 90623
revereiii@aol.com
226 RIVER VIEW LANE
CENTERVILLE, MASSACHUSETTS
02632
(508) 237-1620
Counsel for
Plaintiff/Appellant

DATED: AUGUST 31, 2022

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................... iii

TABLE OF CASES..................................... iv

JURISDICTIONAL STATEMENT............................ 1

ISSUES PRESENTED................................... 2

STATEMENT OF THE CASE ............................. 2

      Nature of the Case............................ 2

      Statement of Facts........................... 2

      Procedural History........................... 7

SUMMARY OF ARGUMENT ............................... 8

ARGUMENT ......................................... 8

I.   Standard of Review By Appeals Court . .. . . . .8

II. Gooseberry Has Demonstrated That its Claim
    of a Regulatory Taking is "Ripe" . . . . . . . . 8

      A.    Gooseberry's Claim is Ripe . . . . . . . . 9

      B.    The District Court Did Not Properly
             Apply the Standards for Deciding Motions
             to Dismiss as It Did Not Draw
             Reasonable Inferences in Favor
             of the Plaintiff in Deciding
             Whether Gooseberry's Claim was Ripe . . . . 18

      C.    Requiring Gooseberry to Apply for a
             Steel Bridge is Futile . . . . . . . . . . 23

III. Alternative Arguments of the ZBA and Mashpee
    Cannot Serve as a Basis for Affirming the
    District Court's Decision . . . . . . . . . . . 24

      A.    The Massachusetts Zoning Act Does
             Not Divest the Federal Court of
             Jurisdiction Over a Federal
             Constitution Claim . . . . . . . . . . . 25

    B.    Gooseberry Does Not Need to Pursue
           a State Inverse Condemnation Claim
           Prior to Filing its Complaint . . . . . . . 26

    C.    The Rooker-Feldman Doctrine
           is Inapplicable . . . . . . . . . . . . . 27

    D.    Plaintiff Has Pled a Viable Takings Claim .28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . .31

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . .31

ADDENDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

# TABLE OF AUTHORITIES

**STATUTES:**

**FEDERAL**

28 U.S.C. § 1331.....................................1

28 U.S.C. § 1334.....................................1

42 U.S.C. § 1983................................. 1, 25

**State:**

G.L. ch. 40A, Sec. 10........................... 12, 19

G.L. ch. 40A, Sec. 15............................... 13

G.L. ch. 40A, Sec. 17............................... 24

G.L. ch. 131, Sec. 40 (first para)............. 24, 25

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12......................... 1,7,8,18,21

**State Regulations:**

310 C.M.R.10.05(4)(b) .............................. 15

**Mashpee Bylaws and Regulations:**

Mashpee Code, Sec. 172-5.E......................... 15

Mashpee Code Sec. 174-12............................ 5

Mashpee Code Sec. 174-31............................ 5

Mashpee Code Sec. 174-32............................ 5

Mashpee Wetland Regulation 3....................... 15

# TABLE OF CASES

*Anderson v. Chamberlain*, 134 F. Supp. 2d 156
 (D. Mass., 2001) . . . . . . . . . . . . . . . . . 11

*Brady v. City Council of Gloucester*,
59 Mass. App. Ct. 691 (2003) . . . . . . . . . . 17

*Davison v. Gov't of P.R-P.R. Firefighters
Corps*, 471 F.3d 220, 222 (1st Cir. 2006) . . . . . . 8

Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,
544 U.S. 280, 284 (2005). . . . . . . . . . . . . 27

*Felkay v. City of Santa Barbara*,
62 Cal. App. 5th 30 (Cal. Ct. App. 2021) . . . . . . .24

*Grill v. United States*, 154 Fed. Cl. 802 (2021) . . . 18

*Guiragossian v. Board of Appeals of Watertown*,
21 Mass. App. Ct. 111 (1985) . . . . . . . . . . 12

*Hahn v. Plan. Bd. of Stoughton*,
24 Mass. App. Ct. 553 (1987). . . . . . . . . . . 16

*Knick v. Township of Scott*, 588 U.S. __ ,
139 S.Ct. 2162 (2019) . . . . . . . . . . . . . . 26, 27

*Lucas v. South Carolina Coastal Council*,
505 U.S. 1003 (1992) . . . . . . . . . . . . . . .29, 30

*MacGibbon v. Bd. of Appeals of Duxbury*,
347 Mass. 690 (1964). . . . . . . . . . . . . . . 16

*Pakdel v. City and County of San Francisco*,
594 U.S. __, 2021 WL 2637819 (2021) . . . .9, 10, 11, 17

*Palazzolo v. Rhode Island*,
533 U.S. 606 (2001) . . . . . . . . . . . 24, 28, 29, 30

*Pelletier v. Bd. of Appeals of Leominster*,
 4 Mass. App. Ct. 58 (1976). . . . . . . . . . . . 16

*Village Green of Sayville, LLC v. Town of Islip*,
No. 19-3353 (2nd Cir., August 5, 2022) . . . . . . . 23

*Williamson County Regional Planning
Commission v. Hamilton Bank of Johnson City*,
473 U.S. 172 (1985) . . . . . . . . . . 10, 11, 18, 26

*Zahra v. Town of Southold*, 48 F.3d 674
(2d Cir. 1995) . . . . . . . . . . . . . . . . . 25

## JURISDICTIONAL STATEMENT

On April 29, 2021, Matthew Haney as Trustee of the Gooseberry Island Trust ("Gooseberry") filed a complaint alleging that the actions of Town of Mashpee ("Mashpee") and the Mashpee Zoning Board of Appeals ("ZBA") had effected a taking of an island in Popponessett Bay owned by Gooseberry and known as Gooseberry Island in violation of the United States and Massachusetts Constitutions in the United States District Court for the District of Massachusetts. Appendix ("A") at pp. 12-72 (Complaint; *see also* District of Massachusetts Docket No. 1:21-CV-1071-JGD). The District Court had subject matter jurisdiction over the complaint pursuant to 28 U.S.C. § 1331 and § 1334 because the complaint sought relief under 42 U.S.C. § 1983.

Rather than answer, Mashpee and the ZBA moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). A. at pp. 73-312. Gooseberry opposed that motion (A. at pp. 313-321) and a hearing was held on September 14, 2021. A. at pp. 322-350. On March 22,2022, Magistrate Judge Dein granted Mashpee and the ZBA's Motion to Dismiss. A. at pp. 351-366. On April 1, 2022, Gooseberry filed a motion for reconsideration. A. at pp. 367-478. On April 25, 2022, Magistrate Judge Dein denied the motion for reconsideration. A. at pp. 493-495. On May 6, 2022, Magistrate Dein entered an order dismissing the Complaint. A. at p. 496. On June 3, 2022, Gooseberry

filed its notice of appeal with the District Court. A. at pp. 497-500.

## ISSUES PRESENTED

Whether Gooseberry's claim that Mashpee and the ZBA had effected a taking of Gooseberry Island in violation of the United States and Massachusetts Constitutions was "ripe" for consideration by the District Court.

## STATEMENT OF THE CASE

### Nature of the Case

On April 29, 2021, Gooseberry filed a complaint alleging that Mashpee and the ZBA had effected a taking of an island in Popponessett Bay owned by Gooseberry and known as Gooseberry Island in violation of the United States and Massachusetts Constitutions. A. at pp. 12-72. Mashpee and the ZBA filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) arguing that the claims of Gooseberry were not "ripe" for adjudication(A. at pp. 73-312) which was granted. A. at pp. 351-366. When the order of dismissal was entered, Gooseberry filed this appeal. A. at pp. 497-500.

### Statement of Facts

The facts in this proceeding are set forth in detail in the Plaintiff's Complaint and need not be fully repeated in this Brief. In summary, Gooseberry purchased Gooseberry Island in 2011. A. at p. 15 (Complaint at paras. 18-19 and Exhibit Five). Gooseberry

Island consists of approximately 4+ acres of land located in Popponessett Bay offshore of the end of Punkhorn Point Road. A. at p. 15 (Complaint at para. 24). The SN Trust which is under the same ownership as Gooseberry owns the land at the end of Punkhorn Point Road. A. at pp. 23, 24, 25, 34 (Complaint at paras. 75, 82, 86-88, and 148). Gooseberry Island is separated from the mainland by a narrow channel that is approximately 40 feet wide at mean low water and 80 feet wide at mean high water with a water depth of less than two feet at mean low water. A. at p. 15 (Complaint at paras. 25-26).

Gooseberry Island is in a Mashpee zoning district that only allows single family residences. A. at p. 34 (Complaint, at paras. 146-147). Gooseberry applied for variances from the ZBA to build a single family residence without a bridge to access the Island in 2013. (A. at pp. 21-22 (Complaint, at paras. 68-74)). The ZBA denied those applications citing public safety concerns as there was no motor vehicle access to Gooseberry Island. A. at p. 21 (Complaint, at para. 74). Gooseberry filed appeals of those decisions which remain pending in the Massachusetts Superior Court. A. at p. 259-262 (Trial Court Docket)

To address the concerns regarding motor vehicle access, Gooseberry applied to the Mashpee Conservation Commission for permission to build a wooden bridge to the island in early 2014. A. at pp.23-26 (Complaint, at paras. 75-99). After nearly a year

3

of hearings, the Commission denied such permits in February, 2015, and then actively opposed the Plaintiff's attempts to appeal those denials and to convert the originally proposed wooden bridge to a steel bridge. A. at pp. 27-29 (Complaint, at paras. 100-116). Specifically, Gooseberry appealed the Commission's denial to the Massachusetts Department of Environmental Protection ("DEP") in February, 2015. A. at p. 27 (Complaint, at para. 103). The DEP first upheld the denial, but, then, concluded that a steel bridge could be approved under state law, but needed to be remanded to the Commission for local review. A. at pp. 27-29 (Complaint, at paras. 106-115). The proceedings before DEP concluded in June, 2017 although Gooseberry did continue to pursue an appeal of the DEP's decision. *Id.*

In October, 2014, while the proceedings before the Commission were ongoing, Mashpee filed a lawsuit in Land Court against the SN Trust making utterly baseless claims that it owns land where a proposed bridge would connect to the mainland at Punkhorn Point Road. A. at pp. 24-25, 29-30, 34-35 (Complaint, at paras. 82-88, 117-119, and 148-150).

Having previously been denied zoning variances in 2013 for building a single family home without motor vehicle access, Gooseberry applied in 2018 for variances from the ZBA to build a house with access via a bridge to be constructed to the island. A. at pp. 31-34 (Complaint, at paras. 132-147). The details with

4

respect to the 2018 variance application are extremely relevant to this appeal and are explained more fully. Specifically, Gooseberry by 2018 had spent more than four years attempting to obtain permits to construct a bridge to access Gooseberry Island and had been met with permit denials by the Commission and active opposition to alternative plans of access, a lawsuit by the Town spuriously claiming ownership of land at the end of Punkhorn Point Road, and coordination with the Mashpee Wampanoag Tribe in opposition to Gooseberry's plans. Due to concerns that the ZBA would deny variances even if Gooseberry spent additional time and funds, and successfully obtain a permit to construct a bridge, Gooseberry applied for variances with access via a bridge from the following requirements of the Mashpee Zoning Bylaw: (i) variance from requirement for frontage on a street, Mashpee Code Sec. 174-12, (ii) variance from frontage for fire department access, Mashpee Code Sec. 174-32, and (iii) variance from 150 foot length of frontage requirement, Mashpee Code Sec. 174-31. A. at p. 20 (Complaint, at para. 132). That is while the ZBA had no authority to regulate the construction of a bridge, it could still deny a zoning variance under the Mashpee Zoning Bylaw which would prevent construction of a single family home on Gooseberry Island and render Gooseberry's bridge permit essentially useless. Gooseberry's application included a plan for a bridge and expressly stated that it would build a bridge when permitted but that it

5

could not specify whether the bridge would be constructed of wood or steel as a final permit had yet to be issued. A. at pp. 31-34 (Complaint, at paras. 132-147); A. at p. 84 (Memorandum in Support of Motion to Dismiss, at p. 10); A. at p. 230 (Superior Court Complaint Challenging Zoning Denial, at para. 17); A. at pp. 233, 240, and 247) (Decisions of ZBA on 2018 variance applications, at p. 1 of each decision); A. at p. 317 (Opposition to Motion to Dismiss at p. 5); A. at pp. 338 and 340-342 (Oral Argument on Motion to Dismiss at pp. 17, 19-21); A. at pp. 372, 393, and 461-463 (Memorandum in Support of Motion for Reconsideration, at p. 3, Exhibit One, p. 6, note 1, and pp. 92-94 (bridge plans submitted to ZBA in 2018). Following a hearing, the ZBA denied the applications, not because Gooseberry failed to apply to the Mashpee Conservation Commission for a steel bridge, but because the ZBA believed that granting the variances for Gooseberry's proposal would "derogate from the underline (sic) purpose and intent of the Zoning Bylaws." A. at pp. 237, 244, and 251 (Memorandum in Support of Motion to Dismiss, at Exhibit 6, pp. 12, 19, and 26). Gooseberry appealed the variance denials to Superior Court and those matters remain stayed. A. at p. 262 (Opposition to Motion for Reconsideration, at Exhibit G).

On October 10, 2019, the Land Court held that the SN Trust owned the land at the end of Punkhorn Point Road and, in its decision, noted how the Town agreed that it had no deeded claim to

that land and submitted to evidence to support a claim of adverse possession. A. at pp. 23-24 (Complaint, at para. 149).

Finally, Mashpee has assured the Mashpee Wampanoag Tribe that it will not allow construction of the bridge to Gooseberry Island without the Tribe's consent. A. at pp. 23- 25 and 35-37 (Complaint, at paras. 75-85 and 151-159). As counsel for the Town stated in February, 2020: "As we discussed yesterday, there are certain Town/Tribe legal obligations and understandings pursuant to our Intergovernmental Agreement and otherwise that would absolutely preclude the Town from agreeing to any terms and conditions relative to construction of a bridge at this location without the consent of the Tribe." A. at pp. 35-36 (Complaint, at para. 153)

## Procedural History

On April 29, 2021, Gooseberry filed a complaint alleging that Mashpee and the ZBA had effected a taking of an island in Popponessett Bay owned by Gooseberry and known as Gooseberry Island in violation of the United States and Massachusetts Constitutions. A. at pp. 12-72. Mashpee and the ZBA filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) arguing that the claims of Gooseberry were not "ripe" for adjudication(A. at pp. 73-312) which was granted. A. at pp. 351-366. When the order of dismissal was entered, Gooseberry filed this appeal. A. at pp. 497-500.

## SUMMARY OF ARGUMENT

The District Court erred is dismissing Gooseberry's complaint as unripe in that the ZBA issued a final decision on a variance application for access to Gooseberry Island via a steel bridge. Further, the District Court failed to draw reasonable inferences in Gooseberry's favor. Finally, any further application would be futile.

## ARGUMENT

### I.   Standard of Review By Appeals Court

The Complaint in this matter was dismissed on May 6, 2022, based upon a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and concluding that the claim was not "ripe" for review. A. at pp. 351-366. The First Circuit "review[s} a dismissal for lack of subject matter jurisdiction de novo, 'accepting the plaintiffs' well-pleaded facts as true and indulging all reasonable inferences to their behoof.'" *Davison v. Gov't of P.R-P.R. Firefighters Corps*, 471 F.3d 220, 222 (1st Cir. 2006) (quoting *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006)).

### II.  Gooseberry Has Demonstrated That its Claim of a Regulatory Taking is "Ripe"

The essence of the District Court's decision to dismiss the complaint is that the claims of Gooseberry are not "ripe" and it

is not futile for Gooseberry to file a further applications with the ZBA and Mashpee, including specifically an application including a steel bridge, because the ZBA and Mashpee have not made a final decision on such an application. The decision is inconsistent with the laws of Massachusetts concerning zoning variances and the factual history of this matter.

### A.    Gooseberry's Claim is Ripe

The United States Supreme Court's decision in *Pakdel v. City and County of San Francisco*, 594 U.S. __, 2021 WL 2637819 (2021), set forth the applicable standard as to when an appeal of a local land use decision as a taking is "ripe" for review. In *Pakdel*, the Court in a per curiam decision held that property owners did not have to exhaust administrative remedies before seeking relief to satisfy a finality requirement for bringing a takings claim. All a plaintiff is required to do is demonstrate is that the regulations at issue would apply to a parcel of land and that the outcome of the administrative process is nearly certain. In this matter, the Plaintiff applied to the Mashpee Zoning Board of Appeals for a variance from the Mashpee Zoning Bylaw to allow development of a single family home without a bridge. A. at pp. 21-22 (Complaint at paras 68-74).   The Defendant Mashpee Zoning Board of Appeals denied that variance request in 2013. *Id*. In 2018, the Plaintiff reapplied to the Mashpee Zoning Board of Appeals for a variance

that specified development of a single family home with either a steel or a wooden bridge to access the island. A. at pp. 31-34 (Complaint at paras. 132-147).[1] The Plaintiff did so because he did not want to go to the trouble of obtaining permits for either bridge if the Defendant Mashpee Zoning Board of Appeals would deny the variance request regardless of whether a bridge existed or not. A. at p. 32 (Complaint at para. 133). On December 20, 2018, the Defendant Mashpee Zoning Board of Appeals again denied the variance request. A. at pp. 33-34 (Complaint at para. 144). Under *Pakdel*, the Plaintiff has demonstrated that the Plaintiff's claim is ripe by making these applications and receiving denials from the Defendants. A claim becomes ripe when "the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations to the particular land question." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985). In *Williamson County*, the Court stated that "there is no requirement that a plaintiff exhaust administrative remedies before bringing a [42 U.S.C. 1983] action." *Id.* Quite interestingly, the Court in *Williamson County* concluded that the Plaintiff's claim was not ripe because the

---

[1] The plans for such bridge can be found in the 2018 applications for zoning variances in the appendix at pages 461-463, and, as such, there is no dispute that the ZBA had an application before them with access via a bridge which Gooseberry stated would be wood or steel depending upon what bridge was approved by the Conservation Commission. *See also* Appendix citations listed on p. 6 of this brief, *supra.*

Plaintiff had failed to request a variance for its property. Here, the Plaintiff has requested a variance and has twice been denied meeting the standard of *Williamson County* and *Pakdel*. *See also Anderson v. Chamberlain*, 134 F. Supp. 2d 156 (D. Mass., 2001) (holding that failure to complete Superior Court appeal of a denial of septic variance does not violate the "finality" requirement).

As explained above, Gooseberry's application to the ZBA in 2018 included a plan and expressly provided that the request for a variance from the Mashpee Zoning Bylaw was for the Island to be accessed by a wooden or a steel bridge. Gooseberry did so because it recognized that the ZBA would have to grant a discretionary site specific waiver (known as a variance) from three provisions of the Mashpee Zoning Bylaw even if it obtained approval of a bridge from the Conservation Commission. The ZBA reviewed that application and denied each of the requests on the basis that the proposal would "derogate from the underline (sic) purpose and intent of the Zoning Bylaws." A. at pp. 237, 244, and 251 (Mashpee and ZBA's Memorandum in Support of Motion to Dismiss, at Ex. 6, at pp. 12, 19, and 26).

The law of zoning variances in Massachusetts evolved out of the need for flexibility in zoning codes that would allow municipalities to avoid unnecessary interference with private property rights and unconstitutional "takings" of land rendered useless by uniform application of zoning requirements. The

11

standard for granting a zoning variance in Massachusetts is, however, notoriously difficult to meet because, when granting a variance, the unelected zoning board is essentially administratively eliminating and rewriting the terms of a bylaw passed through democratic processes for the benefit of a single property owner. Thus, to obtain a zoning variance, an applicant must demonstrate and the board must make the following five findings: (i) due to circumstances concerning soil conditions, the shape of the lot, or the topography of the land; which (ii) especially affect the land but not the zoning district generally; (iii) literal enforcement of the zoning ordinance would cause a substantial hardship (financial or otherwise); (iv) relief can be granted without substantial detriment to the public good; (v) without nullifying or substantially derogating from the intent or purpose of the ordinance. M.G.L. ch. 40A, Sec. 10. Each requirement must be met for the issuance of a variance and, "[e]ven if the plaintiff's lot had satisfied all the requirements of G. L. C. 40A, s. 10, '[n]o person has a legal right to a variance and they are to be granted sparingly.'" *Guiragossian v. Board of Appeals of Watertown*, 21 Mass. App. Ct. 111, 115 (1985), *citing Damaskos v. Board of Appeal of Boston*, 359 Mass, 55, 61 (1971).

The decisions of the ZBA in this matter expressly found that Gooseberry's requests for a variances do not meet the fifth criteria because granting the variance would "derogate from the

underline (sic) purpose and intent of the Zoning Bylaws." A. at pp. 237, 244, and 251 (Mashpee and ZBA's Memorandum in Support of Motion to Dismiss, at Ex. 6, at pp. 12, 19, and 26).

Contrary to the conclusions in the District Court's Decision at pp. 14-15 (A. at pp. 364-365), the variance decision documents do not include a finding that Gooseberry does not have standing to bring to file the request for a variance because Gooseberry does not have an approved steel bridge or that Gooseberry does not have property rights in the land at the end of Punkhorn Point Road.[2] While the District Court in its decision suggests that members of the ZBA expressed concerns about the lack of an approved bridge and uses that as the basis for the position that the ZBA had not reached a final decision ((A. at pp. 364-365) (Decision at pp. 14-15)), the District Court has misconstrued the statements of individual board members with the operative decision of the ZBA. That is the state zoning act requires that the ZBA make a "detailed record of its proceedings" and "setting forth the clearly the reason for its decision." G.L. ch. 40A, Sec. 15. In this matter, the statements of the ZBA members relied upon by the Court merely

---

[2] With respect to the second point, the Land Court ruled in October, 2019, that Haney does own the land at the end of Punkhorn Point Road and that the Town wholly failed to provide any evidence to support a claim to the land. A. at pp. 34-35 (Complaint, at paras. 148-149). It should be noted that the Town baseless opposition demonstrates a Town policy to deny any attempt to develop the Island which supports Haney's claim that further applications are wholly futile.

13

reflect questions or concerns expressed by ZBA members in the "detailed record of its proceedings" and are not the "reason for its decision" which was a failure to demonstrate the fifth criteria as the granting of a variance would "derogate from the underline (sic) purpose and intent of the Zoning Bylaws." A. at pp. 237, 244, and 251 (Mashpee and ZBA's Memorandum in Support of Motion to Dismiss, at Ex. 6, at pp. 12, 19, and 26). Relying on the statements of individual members is akin to an appeals court citing the questions of a judge at oral argument as the basis of a decision rather than the written decision of the judge on a motion.

Much of the District Court's confusion may derive from a belief that the ZBA was faced with an incomplete or otherwise inappropriate request for a variance due to the lack of an approved bridge or established property rights at Punkhorn Point Road. However, the actual vote of the ZBA makes no reference at all to an incomplete application or other deficiency in Gooseberry's right to pursue it. Rather, the application was denied because it would "derogate from the underline (sic) purpose and intent of the Zoning Bylaws." Thus, the District Court committed error by concluding that the ZBA might have voted in favor of the project if presented with an approved bridge as the decision to deny the variance was not based upon the lack of a bridge approval.

Further, the District Court fails to recognized that, under Massachusetts law, the wetland permit for the bridge is actually the last permit which an applicant obtains. *See* G.L. 131, Sec. 40, first para. (wetland notice of intent cannot be filed "before all permits, variances, and approvals required by local by-law with respect to the proposed activity, which are obtainable at the time of such notice, have been obtained"), 310 C.M.R. 10.05(4)(e) ("The requirement under M.G.L. c. 131, §40 to obtain or apply for all obtainable permits, variances and approvals required by local by-law with respect to the proposed activity shall mean only those which are feasible to obtain at the time the Notice of Intent is filed. Permits, variances, and approvals required by local by-law may include, among others, zoning variances . . . ." ); Mashpee Wetland Bylaw, Sec. 172-5.E ("No such application shall be deemed complete until all other obtainable local permits and licenses for the proposed activity have been applied for and proof of applications(s) filed with the Commission."); Mashpee Wetland Regulation 3 ("Though a hearing on the project may commence before other Town boards (where applicable) have permitted the project, written proof of such board's approval of any project (according to the same plans submitted as part of the Notice of Intent to the Conservation Commission) must be provided before any hearing is closed and a permit (Order of Conditions) is issued."). As such, the District Court misapprehended the

permitting process by requiring that Gooseberry obtain a Conservation Commission permit prior to a zoning permit.[3]

Finally, the ZBA is constrained to only review the proposal placed before it and cannot validly determine matters not pending before the board. *Pelletier v. Bd. of Appeals of Leominster*, 4 Mass. App. Ct. 58, 62 (1976). Thus, a zoning board cannot deny a permit to excavate and fill land on the basis that the land created might be unsuitable for a septic system when the determination of the suitability of a septic system is not within the purview of the zoning board. *MacGibbon v. Bd. of Appeals of Duxbury*, 347 Mass. 690, 691-92 (1964). As such, the issue of whether or not a bridge permit would later be issued by the Mashpee Conservation Commission was simply irrelevant to deciding whether the ZBA would grant a zoning variance because, under *MacGibbon*, the ZBA has no authority to address the issue of whether a permit for a bridge steel or otherwise will be issued. Similarly, the ZBA has no authority to adjudicate private property rights and is limited to determining whether the applicant is the record owner of the land and has a colorable legal claim to engage in the proposal. *Hahn v. Plan. Bd. of Stoughton*, 24 Mass. App. Ct. 553, 555 (1987). "Such disputes

---

[3] Further and discussed in detail, below, any application to the Conservation Commission is wholly futile because, while the DEP has stated that it is likely to approve a steel bridge under the Wetland Protection Act, G.L. ch. 131, Sec. 40, if the Conservation Commission denies that permit, the Commission can still deny the granting of a wetland permit under the Mashpee Wetland Bylaw which denial is not reviewable by DEP.

are for the courts, falling under the original jurisdiction of either the Land Court or the Superior Court. See G.L. c. 185, Sec. 1; G.L. c. 212, Sec. 4" unless the undisputed facts demonstrate that the applicant has no right to complete the proposal. *Brady v. City Council of Gloucester*, 59 Mass. App. Ct. 691, 696-97 (2003).[4] As such, the ZBA could not base its decision on whether Gooseberry owned the land at the end of Punkhorn Point Road or on the basis that Gooseberry did not have a Conservation Commission permit. Rather, the zoning variances were denied because allowing a single family home to be built on Gooseberry Island would "derogate from the underline (sic) purpose and intent of the Zoning Bylaws." A. at pp. 237, 244, and 251 (Mashpee and ZBA's Memorandum in Support of Motion to Dismiss, at Ex. 6, at pp. 12, 19, and 26).

In summary, Gooseberry properly placed an application before the ZBA to build a single family home with access via bridge. The ZBA denied the variances because granting a site specific rewrite of the Mashpee Zoning Bylaw would "derogate from the underline (sic) purpose and intent of the Zoning Bylaws." Under *Pakdel*, Gooseberry has pled the application for and denial of a necessary permit making its claim "ripe" for review. For a claim to be ripe,

---

[4]Notably, the Mashpee Zoning By-law §174-3 defines "Applicant as "The person who submits an application for a permit or variance approval…. The applicant must be owner of all land....Proof of ownership shall include a copy of the latest recorded deed." There was no dispute Haney had recorded deeds to both the end of Punkhorn Point Road and the Island when he requested the 2018 zoning variances and has met this criteria.

"a permit must be denied on its merits as opposed to removed from consideration for procedural defects." *Grill v. United States*, 154 Fed. Cl. 802, 815 (2021). In this matter, the 2018 variance requests were denied on the merits for failure to meet the fifth criteria for the granting of a variance by the ZBA. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985), only requires that Gooseberry "resort to the procedure for obtaining variances . . . [and obtain] a conclusive determination by the [relevant regulatory body as to] whether it would allow'' the proposed development" to ripen its taking claim. Here, Gooseberry has twice applied for a variance and in each instance the ZBA has denied the request on a substantive basis and its claim is ripe.

**B.    The District Court Did Not Properly Apply the Standards for Deciding Motions to Dismiss as It Did Not Draw Reasonable Inferences in Favor of the Plaintiff in Deciding Whether Gooseberry's Claim was Ripe**

On Pages 2-3 of its Decision, the District Court correctly set forth the standard for deciding a motion to dismiss as follows:

> Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible entitlement to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

A. at pp. 352-353.

However, the District Court did not properly apply that standard by failing to draw reasonable inferences in favor of Gooseberry. If all reasonable inferences are drawn in favor of Gooseberry, the Complaint properly pleads a "ripe" claim.

Specifically, the Complaint alleges that the Town of Mashpee has enacted zoning bylaws which made it unlawful to construct a single family home on the Island because the Island did not have a road on it. A. at pp. 17-19 (Complaint, at paras. 42-55). The Complaint alleges that the only allowed use of the Island in the applicable zoning district is a single family home. A. at p. 34 (Complaint, at paras. 146-147). As such, the Town of Mashpee had essentially effectuated a taking of Haney's property unless the zoning bylaw was modified by Town meeting or the ZBA in its discretion granted a site-specific waiver (known as a variance) from three provisions of the Mashpee Zoning Bylaw pursuant to G.L. ch. 40A, Sec. 10. A. at p. 19 (Complaint, at para. 55). The Complaint alleges that Gooseberry requested the ZBA to grant a zoning variance without access by a bridge in 2013 (A. at pp. 22 (Complaint at paras. 72-74)), and, again in 2018, conditioned upon a bridge being constructed. A. at pp. 31-33 (Complaint at paras. 132-144). The Complaint set forth how the Town of Mashpee has denied every permit that Gooseberry ever applied for to develop or

access the Island and actively opposed Gooseberry's appeal of those
denials. A. at pp. 12-72 (Complaint). The Complaint sets forth how
the Town filed a Land Court Complaint in 2014, challenging the SN
Trust's[5] ownership of land at the end of Punkhorn Point Road from
which a bridge would be constructed (A. at pp. 24-25, 29-30, 34-
35 (Complaint, at paras. 82-88, 117-119, and 148-150), but then
utterly failed to submit any evidence to support their claim. As
stated by the Land Court, the Town:

> did not offer any source deeds into evidence to show a
> foundation for [its] claim . . . . It did not offer
> testimony from any witnesses on that topic or, for that
> matter, on any other [and] relied solely on (1) a 1954
> deed from George and Gladys Schneider to the Town (with
> no underlying source deeds or other evidence to show a
> foundation tying that deed back [to the 1888 division of
> lands in Mashpee), and (2) a 1957 Plan . . . which the
> Town created based upon the Schneider deed but which, in
> fact, is inconsistent with it. I find neither reliable.
> (footnotes omitted)

A. p. 25 (Complaint, at para. 88).

The Complaint sets forth how the Town actively opposed the
applications of Gooseberry before local boards. A. at pp. 25 and
33 (Complaint at paras. 91, 138, and 142). The Complaint sets forth
how the Town has made promises to the Mashpee Wampanoag Tribe in
an Intergovernmental Agreement that it will work to have the waters
adjacent to the Island through which the bridge would be
constructed transferred into trust for the Tribe and that the Tribe
and the Town have been acting in concert to oppose any attempt by

---

[5] Matthew Haney controls both the SN Trust and Gooseberry.

Gooseberry to develop the Island. A. at pp. 19-21, 23, 24, 25, 26, 30, 33, and 35-37 (Complaint at paras. 58-67, 77, 82, 85, 95-96, 122, 140, 151-159). The Complaint sets forth how the Town has sought to acquire the Island for conservation lands, but that effort has been stymied at least in part due to the cost.[6] A. at pp. 19, 30, and 37-38 (Complaint at paras. 56, 57, 124, 160-173). The Complaint sets forth that the ZBA denied the 2018 variances on the basis that the granting of the variances would be inconsistent with public safety and derogate from the purpose and intent of the Zoning Bylaws. A. at pp. 33-34 (Complaint at para. 144).

As such, the Complaint sets forth a comprehensive series of facts which demonstrate that the Town of Mashpee acting through its various agencies, boards, and attorneys have engaged in a multi-year scheme to prevent Gooseberry from obtaining any permits to use the Island for the benefit of the Town and the Mashpee Wampanoag Tribe even without drawing all reasonable inferences in favor of Gooseberry as required in deciding a motion to dismiss under Fed. R. Civ P. 12(b)(6).

Rather than consider the reasonable inferences from the undisputed allegations, the Decision quite incredibly concludes that the matter in not "ripe" because comments of ZBA members on

---

[6] It should be noted that the Island is obviously more valuable with permits to construct a home than as unbuildable open space and, therefore, the Town has an inherent conflict between its permitting responsibilities and its desire to acquire the Island.

the application at the hearing, rather than the operative decision language of the vote of denial, suggested to the District Court that the ZBA members might have had concerns with voting on a variance application without a bridge permit in place. In doing so, the Court ignores the express language of the ZBA decisions which state that the basis of their decision is that the Gooseberry's variance requests "derogate from the underline (sic) purpose and intent of the Zoning Bylaws" and the Massachusetts case law which prohibits the ZBA from considering the likelihood of obtaining other permits. If the District Court had properly applied the standards for deciding a motion to dismiss, the Court would have not only accepted the well plead facts set forth above, but, also, the reasonable inference that Mashpee and the ZBA will not issue any permits to allow development of the Island based upon their nearly nine years of opposition to any permit application made by Gooseberry for the Island. While ultimately the Court might reach the conclusion after facts are developed that the Town and ZBA truly are applying the applicable law and providing a reasonable opportunity for Gooseberry to obtain permits for the Island potentially rendering Gooseberry's claim unripe, the Court should not have concluded that the Complaint should be dismissed when the uncontested allegations of the Complaint and reasonable inferences from those allegations demonstrate that the Town of Mashpee and its ZBA have enacted

zoning bylaws which render the Island unusable for the permitted use which is a single family home and have refused to grant zoning variances which would allow such use leaving Gooseberry with an island that it can only look at. *Compare Village Green of Sayville, LLC v. Town of Islip*, No. 19-3353 (2nd Cir., August 5, 2022) (claim is ripe where developer fails to obtain relief from restrictions when town board tie vote results in procedural denial).

   **C.    Requiring Gooseberry to Apply for a
          Steel Bridge is Futile**

As stated by the District Court:

> A regulatory takings claim may proceed despite a plaintiff eschewing the relevant permitting processes when engaging in the permitting process would be "futile," such as "where special circumstances exist such that a permit application is not a 'viable option,'" or "the granting authority has dug in its heels and made it transparently clear that the permit, application or no, will not be forthcoming[.]" *Gilbert v. City of Cambridge*, 932 F.2d 51, 60-61 (1st Cir. 1991).

A. at p. 364 (Decision at p. 14).

As set forth above, Mashpee and the ZBA have engaged in a nine year campaign to prevent any development of the island owned by Gooseberry by denying every permit which Gooseberry has applied for. Further, Mashpee has stated that it will not act favorably on any application unless the Wampanoag Tribe assents as it has entered into an Intergovernmental Agreement with the Tribe and issuing a permit to allow access by bridge would violate that

agreement. As such, any further applications by Gooseberry would be wholly futile.

In *Palazzolo v. Rhode Island*, 533 U.S. 606, 621 (2001), the court held that a claim was ripe when the permitting agency "ma[de] plain that the landowner could not fill or develop any of the wetlands property." Here, Mashpee and the ZBA have made it clear that they will not issue any of the required permits. As such, it would be wholly futile to required Gooseberry to apply for a steel bridge as the permit would not be issued by the Conservation Commission and the ZBA has denied a variance for access via a steel bridge because it would "derogate from the underline (sic) purpose and intent of the Zoning Bylaws." A. at pp. 237, 244, and 251 (Mashpee and ZBA's Memorandum in Support of Motion to Dismiss, at Ex. 6, at pp. 12, 19, and 26). As such, it would be wholly futile for Gooseberry to apply for further permits to develop the Island. *See also Felkay v. City of Santa Barbara*, 62 Cal. App. 5th 30 (Cal. Ct. App. 2021) (applicant not required to submit futile applications when decision on existing application demonstrates that alternative development plans also will be denied).

III. **Alternative Arguments of the ZBA and Mashpee Cannot Serve as a Basis for Affirming the District Court's Decision**

Mashpee and the ZBA argued to the District Court that: (i) Gooseberry's claims are barred by G.L. ch. 40A, Sec. 17; (ii)

Gooseberry must pursue a state inverse condemnation claim before bringing this federal action; (iii) the District Court should not assert jurisdiction under the Rooker-Feldman doctrine; and (iv) Gooseberry has failed to plead a viable takings claim. Because the Court of Appeals may uphold the decision of the District Court upon a different basis than that adopted by it, this brief addresses the alternative arguments asserted by Mashpee and the ZBA.

A. **The Massachusetts Zoning Act Does Not Divest the Federal Court of Jurisdiction Over a Federal Constitution Claim**

Mashpee and the ZBA argued that Gooseberry's claims are "barred [by] G.L. ch. 40A, Sec. 17." A. at pp. 89-91 (Memorandum in Support at pp. 15-17). The argument ignores that federal law allows parties to bring actions under 42 U.S.C. 1983 to redress constitutional. The cases cited by Mashpee and the ZBA did not even support their position as the decisions recognize that federal courts have a role in addressing unconstitutional actions by local zoning authorities. In particular, *Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995) cited by Mashpee and the ZBA involved claims that certain actions by a Town and its zoning board of appeals violated the plaintiff's substantive due process rights and constituted equal protection violations. The *Southold* court addressed the plaintiff's claims because:

we have acknowledged that we should entertain [land use determination] claims where a landowner's constitutional

> rights are indeed infringed by local land-use
> actions. *See Brady v. Town of Colchester,* 863 F.2d 205,
> 215 (2d Cir. 1988). In fact, in such an instance, "our
> duty to protect the constitutional interest is
> clear." *Sullivan* [*v. Town of Salem,* 805 F.2d 81], 82
> (2d Cir. 1986).

*Southold*, at 680.

In this matter, Gooseberry claims that the actions of the ZBA resulted in a taking of Gooseberry's property in violation of the United States Constitution. Gooseberry has not requested that the federal court review the appropriateness of the decisions of the ZBA and reverse them in a manner favorable to the Plaintiff, but, rather, has solely requested that Gooseberry be compensated for the regulatory taking of his property by such actions. As such, the availability of an appeal to state court of the ZBA's decisions does not divest the federal court of jurisdiction to determine whether the ZBA violated the Gooseberry's constitutional rights.

**B.    Gooseberry Does Not Need to Pursue a State Inverse Condemnation Claim Prior to Filing its Complaint**

Mashpee and the ZBA argued that Gooseberry must first bring an inverse condemnation claim in state court. A. at pp. 96-97 (Memorandum in Support at pp. 22-23) The argument was based upon the second holding of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985), but been superseded by *Knick v. Township of Scott*, 588 U.S. __ , 139 S.Ct. 2162 (2019), in which the United States Supreme Court held that *Williamson* was wrongly decided. The *Knick* decision

expressly states that "[t]he state litigation requirement of *Williamson County* is overruled. A property owner may bring a takings claim under Sec. 1983 upon the taking of his property without just compensation by a local government." *Knick*, at 139 S.Ct. 2179. As such, Gooseberry need not bring an inverse condemnation action.

### C.   The Rooker-Feldman Doctrine is Inapplicable

The Rooker-Feldman doctrine is a rarely applied exception to federal court jurisdiction. As stated by the United States Supreme Court:

> The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Gooseberry is not requesting that the federal district court reverse the actions of any Massachusetts court or agency, but, rather, that the court require that Mashpee pay damages for taking the Gooseberry's property based upon the denial of variances by the ZBA. In summary, the Rooker-Feldman doctrine is irrelevant to this matter.

**D.    Plaintiff Has Pled a Viable Takings Claim**

Mashpee and the ZBA requested that the District Court simply end this proceeding without a trial or any evidentiary hearing arguing that the Gooseberry can never demonstrate a regulatory taking of their property. A. at pp. 99-102 (Memorandum in Support at pp. 25-28) The primary focus of the argument is that Mashpee had already destroyed the value of Gooseberry's property by regulatory actions and the intergovernmental agreement with the Mashpee Wampanoag Tribe prior to Gooseberry's acquisition of the Island and that applying the analysis found in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978, it is simply not possible for Gooseberry to demonstrate a viable regulatory taking claim.

In making this argument, Mashpee and the ZBA, while citing *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), ignore it's holding. That is takings claims are analyzed under two different standards depending upon whether the landowner retains an economically beneficial use of the land. When the land owner retains an economically beneficial use, the Court applies the *Penn Central* factors including a review of the regulations economic impact on the landowner and the extent to which the regulation interferes with investment backed expectations. In contrast, such factors are irrelevant when the landowner, like Gooseberry is deprived of all economically beneficial and productive uses of

their land and the sole issue is whether background principles of the common law including whether the proposed use would constitute a public nuisance would prohibit the use. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)*. Palazzolo* specifically rejected the argument that a pre-acquisition regulation is a defense to either *Penn Central* or *Lucas* based claims.

Specifically, *Palazzolo* involved an appeal from a decision of the Rhode Island Supreme Court wherein that court held that a "post regulation acquisition was fatal to the **claim of deprivation of all economic use, and to the *Penn Central* claim**." *Palazzolo* at 626 (citations omitted, and emphasis supplied). In reversing the Rhode Island court's decision, the Supreme Court rejected the concept that a "post regulation acquisition" prevented a takings claims stating:

> The Takings Clause, however, in certain circumstances allows a landowner to assert that a particular exercise of the State's regulatory power is so unreasonable or onerous as to compel compensation. Just as a prospective enactment, such as a new zoning ordinance, can limit the value of land without effecting a taking because it can be understood as reasonable by all concerned, other enactments are unreasonable and do not become less so through passage of time or title. Were we to accept the State's rule, the post enactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable. A State would be allowed, in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land.

*Id.* at 627.

The Supreme Court then summarized: "It suffices to say that a regulation that otherwise would be unconstitutional absent compensation is not transformed into a background principle of the State's law by mere virtue of the passage of title." *Id*. at 629-630. In summary, neither a *Penn Central* or a *Lucas* based claim is precluded by a pre-acquisition regulation.

## CONCLUSION

The Court should reverse the decision and order of dismissal of the District Court and remand the matter for further proceedings.

Respectfully Submitted,


/s/Paul Revere, III

Paul Revere, III
I.D. No. 90623

Law Offices of Paul Revere, III
226 River View Lane
Centerville, Massachusetts 02632
(508)237-1620
revereiii@aol.com

Date: August 31, 2022

## CERTIFICATE OF COMPLIANCE WITH RULE 32

I, Paul Revere, III, certify that the foregoing Brief complies with the rules of court that pertain to the filing of briefs.

/s/Paul Revere, III

Paul Revere, III

## CERTIFICATE OF SERVICE

I certify that on August 31, 2022, I served this Brief by electronically filing it with a copy to Appellees' counsel of record.

/s/Paul Revere, III
Paul Revere, III

ADDENDUM

TABLE OF CONTENTS

Fed. R. Civ. P. 12(b)............................... 33

G.L. ch. 40A, Sec. 10.............................. 33

G.L. ch. 40A, Sec. 15.............................. 34

G.L. ch. 40A, Sec. 17.............................. 36

G.L. ch. 131, Sec. 40 (first para)................. 38

310 C.M.R. 10.05(4)(e)............................. 40

Mashpee Code, Sec. 172-5.E......................... 40

Mashpee Code Sec. 174-12........................... 40

Mashpee Code Sec. 174-31........................... 41

Mashpee Code Sec. 174-32........................... 41

Mashpee Wetland regulation 3....................... 41

Order Appealed From (5/6/22)....................... 42

<u>Fed. R. Civ. P. 12(b)</u>

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

   (1) lack of subject-matter jurisdiction;

   (2) lack of personal jurisdiction;

   (3) improper venue;

   (4) insufficient process;

   (5) insufficient service of process;

   (6) failure to state a claim upon which relief can be granted; and

   (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.


<u>G.L. ch. 40A, Sec. 10</u>


The permit granting authority shall have the power after public hearing for which notice has been given by publication and posting as provided in section eleven and by mailing to all parties in interest to grant upon appeal or upon petition with respect to particular land or structures a variance from the terms of the applicable zoning ordinance or by-law where such permit granting authority specifically finds that owing to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law. Except where local ordinances or by-laws

shall expressly permit variances for use, no variance may authorize a use or activity not otherwise permitted in the district in which the land or structure is located; provided however, that such variances properly granted prior to January first, nineteen hundred and seventy-six but limited in time, may be extended on the same terms and conditions that were in effect for such variance upon said effective date.

The permit granting authority may impose conditions, safeguards and limitations both of time and of use, including the continued existence of any particular structures but excluding any condition, safeguards or limitation based upon the continued ownership of the land or structures to which the variance pertains by the applicant, petitioner or any owner.

If the rights authorized by a variance are not exercised within one year of the date of grant of such variance such rights shall lapse; provided, however, that the permit granting authority in its discretion and upon written application by the grantee of such rights may extend the time for exercise of such rights for a period not to exceed six months; and provided, further, that the application for such extension is filed with such permit granting authority prior to the expiration of such one year period. If the permit granting authority does not grant such extension within thirty days of the date of application therefor, and upon the expiration of the original one year period, such rights may be reestablished only after notice and a new hearing pursuant to the provisions of this section.


G.L. ch. 40A, Sec. 15

Any appeal under section eight to a permit granting authority shall be taken within thirty days from the date of the order or decision which is being appealed. The petitioner shall file a notice of appeal specifying the grounds thereof, with the city or town clerk, and a copy of said notice, including the date and time of filing certified by the town clerk, shall be filed forthwith by the petitioner with the officer or board whose order or decision is being appealed, and to the permit granting authority, specifying in the notice grounds for such appeal. Such officer or board shall forthwith transmit to the board of appeals or zoning administrator all documents and papers constituting the record of the case in which the appeal is taken.

Any appeal to a board of appeals from the order or decision of a zoning administrator, if any, appointed in accordance with section thirteen shall be taken within thirty days of the date

of such order or decision or within thirty days from the date on which the appeal, application or petition in question shall have been deemed denied in accordance with said section thirteen, as the case may be, by having the petitioner file a notice of appeal, specifying the grounds thereof with the city or town clerk and a copy of said notice including the date and time of filing certified by the city or town clerk shall be filed forthwith in the office of the zoning administrator and in the case of an appeal under section eight with the officer whose decision was the subject of the initial appeal to said zoning administrator. The zoning administrator shall forthwith transmit to the board of appeals all documents and papers constituting the record of the case in which the appeal is taken. An application for a special permit or petition for variance over which the board of appeals or the zoning administrator as the case may be, exercise original jurisdiction shall be filed by the petitioner with the city or town clerk, and a copy of said appeal, application or petition, including the date and time of filing, certified by the city or town clerk, shall be transmitted forthwith by the petitioner to the board of appeals or to said zoning administrator.

Meetings of the board shall be held at the call of the chairman or when called in such other manner as the board shall determine in its rules. The board of appeals shall hold a hearing on any appeal, application or petition within sixty-five days from the receipt of notice by the board of such appeal, application or petition. The board shall cause notice of such hearing to be published and sent to parties in interest as provided in section eleven. The chairman, or in his absence the acting chairman, may administer oaths, summon witnesses, and call for the production of papers.

The concurring vote of all members of the board of appeals consisting of three members, and a concurring vote of four members of a board consisting of five members, shall be necessary to reverse any order or decision of any administrative official under this chapter or to effect any variance in the application of any ordinance or by-law.

All hearings of the board of appeals shall be open to the public. The decision of the board shall be made within one hundred days after the date of the filing of an appeal, application or petition, except in regard to special permits, as provided for in section nine. The required time limits for a public hearing and said action, may be extended by written agreement between the applicant and the board of appeals. A copy of such agreement shall be filed in the office of the city or town clerk. Failure by the board to act within said one hundred

days or extended time, if applicable, shall be deemed to be the grant of the appeal, application or petition. The petitioner who seeks such approval by reason of the failure of the board to act within the time prescribed shall notify the city or town clerk, in writing, within fourteen days from the expiration of said one hundred days or extended time, if applicable, of such approval and that notice has been sent by the petitioner to parties in interest. The petitioner shall send such notice to parties in interest, by mail and each notice shall specify that appeals, if any, shall be made pursuant to section seventeen and shall be filed within twenty days after the date the city or town clerk received such written notice from the petitioner that the board failed to act within the time prescribed. After the expiration of twenty days without notice of appeal pursuant to section seventeen, or, if appeal has been taken, after receipt of certified records of the court in which such appeal is adjudicated, indicating that such approval has become final, the city or town clerk shall issue a certificate stating the date of approval, the fact that the board failed to take final action and that the approval resulting from such failure has become final, and such certificate shall be forwarded to the petitioner. The board shall cause to be made a detailed record of its proceedings, indicating the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and setting forth clearly the reason for its decision and of its official actions, copies of all of which shall be filed within fourteen days in the office of the city or town clerk and shall be a public record, and notice of the decision shall be mailed forthwith to the petitioner, applicant or appellant, to the parties in interest designated in section eleven, and to every person present at the hearing who requested that notice be sent to him and stated the address to which such notice was to be sent. Each notice shall specify that appeals, if any, shall be made pursuant to section seventeen and shall be filed within twenty days after the date of filing of such notice in the office of the city or town clerk.


G.L. ch. 40A, Sec. 17


Any person aggrieved by a decision of the board of appeals or any special permit granting authority or by the failure of the board of appeals to take final action concerning any appeal, application or petition within the required time or by the failure of any special permit granting authority to take final action concerning any application for a special permit within the required time, whether or not previously a party to the proceeding, or any

municipal officer or board may appeal to the land court department, the superior court department in which the land concerned is situated or, if the land is situated in Hampden county, either to said land court or, superior court department or to the division of the housing court department for said county, or if the land is situated in a county, region or area served by a division of the housing court department either to said land court or superior court department or to the division of said housing court department for said county, region or area, or to the division of the district court department within whose jurisdiction the land is situated except in Hampden county, by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk. If said appeal is made to said division of the district court department, any party shall have the right to file a claim for trial of said appeal in the superior court department within twenty-five days after service on the appeal is completed, subject to such rules as the supreme judicial court may prescribe. Notice of the action with a copy of the complaint shall be given to such city or town clerk so as to be received within such twenty days. The complaint shall allege that the decision exceeds the authority of the board or authority, and any facts pertinent to the issue, and shall contain a prayer that the decision be annulled. There shall be attached to the complaint a copy of the decision appealed from, bearing the date of filing thereof, certified by the city or town clerk with whom the decision was filed.

If the complaint is filed by someone other than the original applicant, appellant or petitioner, such original applicant, appellant, or petitioner and all members of the board of appeals or special permit granting authority shall be named as parties defendant with their addresses. To avoid delay in the proceedings, instead of the usual service of process, the plaintiff shall within fourteen days after the filing of the complaint, send written notice thereof, with a copy of the complaint, by delivery or certified mail to all defendants, including the members of the board of appeals or special permit granting authority and shall within twenty-one days after the entry of the complaint file with the clerk of the court an affidavit that such notice has been given. If no such affidavit is filed within such time the complaint shall be dismissed. No answer shall be required but an answer may be filed and notice of such filing with a copy of the answer and an affidavit of such notice given to all parties as provided above within seven days after the filing of the answer. Other persons may be permitted to intervene, upon motion. The clerk of the court shall give notice of the hearing as in other cases without jury, to all parties whether or not they have appeared. The court shall hear all evidence pertinent to the authority of the board or

special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive, notwithstanding any defect of procedure or of notice other than notice by publication, mailing or posting as required by this chapter, and the validity of any action shall not be questioned for matters relating to defects in procedure or of notice in any other proceedings except with respect to such publication, mailing or posting and then only by a proceeding commenced within ninety days after the decision has been filed in the office of the city or town clerk, but the parties shall have all rights of appeal and exception as in other equity cases.

A city or town may provide any officer or board of such city or town with independent legal counsel for appealing, as provided in this section, a decision of a board of appeals or special permit granting authority and for taking such other subsequent action as parties are authorized to take.

Costs shall not be allowed against the board or special permit granting authority unless it shall appear to the court that the board or special permit granting authority in making the decision appealed from acted with gross negligence, in bad faith or with malice.

Costs shall not be allowed against the party appealing from the decision of the board or special permit granting authority unless it shall appear to the court that said appellant or appellants acted in bad faith or with malice in making the appeal to the court.

The court shall require nonmunicipal plaintiffs to post a surety or cash bond in a sum of not less than two thousand nor more than fifteen thousand dollars to secure the payment of such costs in appeals of decisions approving subdivision plans.

All issues in any proceeding under this section shall have precedence over all other civil actions and proceedings.


G.L. ch. 131, Sec. 40 (first para.)

No person shall remove, fill, dredge or alter any bank, riverfront area, fresh water wetland, coastal wetland, beach, dune, flat, marsh, meadow or swamp bordering on the ocean or on any estuary, creek, river, stream, pond, or lake, or any land under said waters or any land subject to tidal action, coastal storm flowage, or flooding, other than in the course of

maintaining, repairing or replacing, but not substantially
changing or enlarging, an existing and lawfully located
structure or facility used in the service of the public and used
to provide electric, gas, sewer, water, telephone, telegraph and
other telecommunication services, without filing written notice
of his intention to so remove, fill, dredge or alter, including
such plans as may be necessary to describe such proposed
activity and its effect on the environment and without receiving
and complying with an order of conditions and provided all
appeal periods have elapsed. Said notice shall be filed by
delivery in hand to the conservation commission or its
authorized representative or by certified mail, return receipt
requested, to said commission, or, if none, to the board of
selectmen in a town or the mayor of a city in which the proposed
activity is to be located. Upon such filing, the receipt of such
notice shall be acknowledged in writing on the face thereof and
shall include the time and date so received. A person delivering
said notice by hand shall be given a receipt in writing
acknowledging the time and date of such filing. Copies of such
notice shall be sent at the same time by certified mail to the
department of environmental protection. To defray state and
local administrative costs each person filing such a notice
shall pay a filing fee, determined on a sliding scale basis by
the commissioner of administration after consultation with the
secretary of environmental affairs. Fifty percent of any filing
fee in excess of twenty-five dollars shall be made payable to
the department of environmental protection, in a manner to be
determined by the commissioner of environmental protection, at
the same time as the copies of the notice are sent to the
department of environmental protection. The remainder of said
fee shall be made payable to the city or town; provided, that
said remainder shall be expended solely by the local
conservation commission for the performance of its duties under
this chapter and shall accompany the copy of the notice sent to
the city or town. No such notice shall be sent before all
permits, variances, and approvals required by local by-law with
respect to the proposed activity, which are obtainable at the
time of such notice, have been obtained, except that such notice
may be sent, at the option of the applicant, after the filing of
an application or applications for said permits, variances, and
approvals; provided, that such notice shall include any
information submitted in connection with such permits,
variances, and approvals which is necessary to describe the
effect of the proposed activity on the environment. Upon receipt
of any notice hereunder the department of environmental
protection, hereinafter called the department, shall designate a
file number for such notice and shall send a notification of
such number to the person giving notice to the conservation

commission, selectmen or mayor to whom the notice was given. Said notification shall state the name of the owner of the land upon which the proposed work is to be done and the location of said land.

310 C.M.R. 10.05(4)(e)

The requirement under M.G.L.c.131,§40 to obtain or apply for all obtainable permits, variances and approvals required by local by-law with respect to the proposed activity shall mean only those which are feasible to obtain at the time the Notice of Intent is filed. Permits, variances, and approvals required by local by-law may include, among others, zoning variances, permits from boards of appeals, permits required under floodplain or wetland zoning by-laws and gravel removal permits. They do not include, among others, building permits under the State Building Code, M.G.L. c. 23B, § 16, or subdivision control approvals under the State Subdivision Control Law, M.G.L. c. 41, §§ 81K through 81GG, which are issued by local authorities. When an applicant for a comprehensive permit (under M.G.L. c. 40B, §§ 20 through 23) from a board of appeals has received a determination from the board granting or denying the permit and, in the case of a denial, has appealed to the Housing Appeals Committee (established under M.G.L. c. 23B, § 5A), said applicant shall be deemed to have applied for all permits obtainable at the time of filing.

Mashpee Code, Sec. 172-5.E

No such application shall be deemed complete until all other obtainable local permits and licenses for the proposed activity have been applied for and proof of applications(s) filed with the Commission. In the event of a demonstrated hardship, the Commission may waive this requirement upon request of the applicant.

Mashpee Code Sec. 174-12

No building shall be erected except on a lot fronting on a street, and there shall be not more than one (1) principle building on any residential lot, except as allowed under this chapter. For the purpose of adequate access to a parcel of land proposed for subdivision or division, there shall be required direct access from the parcel or lot to a paved town, county or state road or a street for which a road covenant has been

released by the Planning Board or a street having a right-of-way layout and construction meeting at least the minimum layout width, pavement, drainage and other street requirements of the Mashpee Subdivision Regulations and Planning Board for subdivision streets.


Mashpee Code Sec. 174-31

| Zoning District | Minimum Lot Size Square Feet Lot | Minimum Lot Frontage (ft) |
|---|---|---|
| R3 | 40,000. | 150 |


Mashpee Code Sec. 174-32

To ensure that all buildings shall be accessible to Fire Department apparatus by way of access roadways capable of supporting firefighting apparatus with an all-weather surface roadway, there shall be an unobstructed, paved access roadway of not less than twenty (20') feet with a vertical clearance of not less than thirteen (13') feet six (6") inches with all corners having a minimum inside radius of not less than twenty-eight (28') feet and a minimum outside radius of not less than forty-six (46') feet. Said access roadway shall be constructed to a point not less than one hundred fifty (150') feet from the furthest point of any building on the lot. Where there is a lot with only a one-family dwelling and/or a residential accessory building, such access, where it lies within the lot, may be by a maintained all-weather surface driveway, constructed by any combination and manipulation of soils, with or without admixtures, which produce a firm mass capable of supporting fire apparatus in all weather conditions and having an improved surface width of twelve (12') feet and a cleared width of sixteen (16') feet.


Mashpee Wetland Regulation 3

Though a hearing on the project may commence before other Town boards (where applicable) have permitted the project, written proof of such board's approval of any project (according to the same plans submitted as part of the Notice of Intent to the Conservation Commission) must be provided before any hearing is closed and a permit (Order of Conditions) is issued.

ORDER APPEALED FROM (5/6/22)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


MATTHEW HANEY,                          )
                                        )
              Plaintiff,                )
v.                                      )          CIVIL ACTION
                                        )          NO. 21-10718-JGD
TOWN OF MASHPEE et al,                  )
                                        )
              Defendants.               )


## ORDER OF DISMISSAL

DEIN, U.S.M.J.

       In accordance with the Court's Memorandum of Decision and Order dated March 22,

2022, allowing the defendants' motion to dismiss, and the Court's Memorandum of Decision

and Order dated April 25, 2022, denying the plaintiff's motion for reconsideration, it is hereby

ORDERED that the above-entitled action be and hereby is dismissed.

                                        ROBERT M. FARRELL,
                                        CLERK OF COURT


                                        / s / Katherine Thomson
                                        By:  Deputy Clerk

DATED:  May 6, 2022