No. 22-1446

_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

MATTHEW HANEY as Trustee of
the Gooseberry Island Trust

Plaintiff-Appellant

v.

TOWN OF MASHPEE; MASHPEE ZONING BOARD OF APPEALS;
JONATHAN FURBUSH, WILLIAM A. BLAISEDELL; SCOTT
GOLDSTEIN: NORMAN J. GOULD; BRADFORD H. PITTSLEY;
SHARON SANGELEER, as they are members of the Zoning
Board of Appeals of the Town of Mashpee

Defendants-Appellees

_____

REPLY BRIEF OF THE APPELLANT
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CASE No. 1:19-CV-10982-DJC
_____

                                                                                                                                           PAUL REVERE, III,
I.D. No. 90623
revereiii@aol.com
226 RIVER VIEW LANE
CENTERVILLE, MASSACHUSETTS
02632
(508) 237-1620
Counsel for
Plaintiff/Appellant

DATED: DECEMBER 14, 2022

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................... ii

TABLE OF CASES...................................... iii

ARGUMENT ............................................ 1

I.   Mashpee and the ZBA Mislead the Court by .......1
     Arguing That Gooseberry Needs to Apply for a
     Wetlands Permit to Demonstrate That Its Claim
     is Ripe

II.  Mashpee and the ZBA Simply Ignore Established.. 5
     Case Law on Purchases Undertaken After a
     Regulation Is in Effect and Whether a Taking of
     All Economically Beneficial Use Has Occurred

III. Mashpee and the ZBA Wholly Ignore the . . . . . 9
     Pakdel Decision In arguing that
     Further Applications Are Not Futile

CONCLUSION .......................................... 10

CERTIFICATE OF COMPLIANCE...........................11

CERTIFICATE OF SERVICE..............................12

ADDENDUM ...........................................13

## **TABLE OF AUTHORITIES**

**Mashpee Bylaws and Regulations:**

Mashpee Zoning Sec. 174-3 ........................ 4

Mashpee Zoning Sec. 174-12 ........................1

Mashpee Zoning Sec. 174-31 ........................1

Mashpee Zoning Sec. 174-32 ........................1

Mashpee Planning Board Regulations – Section VII.. 4

# TABLE OF CASES

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021). . . . . . . . . . . . . . . . . . . . . . . 7

*Home for Aged Women v. Commonwealth*, 202 Mass. 422 (1909). . . . . . . . . . . . . . . . . . . . . . . . 4

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005). . . . . . . . . . . . . . . . . . . . . . .5,6

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . 5,6

*Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017). . . 7

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001). . .7,8

*Pakdel v. City and County of San Francisco*, 594 U.S. __, 2021 WL 2637819 (2021) . . . . . . . . . . . . . 9

*Pazolt v. Dir. of Div. of Marine Fisheries*, 417 Mass. 565 (1994) ). . . . . . . . . . . . . . . . . . . . . 4

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978) . . . . . . . . . . . . . . . . . . . . . 5,6

# ARGUMENT

## I. Mashpee and the ZBA Mislead the Court by Arguing That Gooseberry Needs to Apply for a Wetlands Permit to Demonstrate That Its Claim is Ripe

Matthew Haney as Trustee of the Gooseberry Island Trust ("Gooseberry") filed a complaint alleging that the actions of Town of Mashpee ("Mashpee") and the Mashpee Zoning Board of Appeals ("ZBA") had effected a taking of an island in Popponessett Bay owned by Gooseberry and known as Gooseberry Island in violation of the United States and Massachusetts Constitutions in the United States District Court for the District of Massachusetts. Appendix ("A") at pp. 12-72 (Complaint; see also District of Massachusetts Docket No. 1:21-CV-1071-JGD). Gooseberry did so because, regardless of whether a steel bridge or a wooden bridge was constructed, Gooseberry would be unable to comply with three provisions of the Mashpee Zoning Bylaw: (i) requirement for frontage on a street, Mashpee Code Sec. 174-12,(ii) requirement for frontage for fire department access, Mashpee Code Sec. 174-32, and (iii) requirement for 150 foot length of frontage requirement, Mashpee Code Sec. 174-31. A. at p. 20(Complaint, at para. 132).

This point bears repeating. Gooseberry applied for the variances from the Mashpee Zoning Bylaw because, even if its wooden or steel

1

bridge was approved, it would still need variances from multiple provisions of the Mashpee Zoning Bylaw and it sought a determination as to whether the ZBA would grant such variances if a bridge was approved. That is while the ZBA had no authority to regulate the construction of a bridge, it could still deny a zoning variance under the Mashpee Zoning Bylaw which would prevent construction of a single family home on Gooseberry Island and render Gooseberry's bridge permit essentially useless.

Rather than address whether the denial of the variances by the ZBA constituted a compensable taking, Mashpee and the ZBA mislead the Court and focus on whether the Complaint was "unripe because the Plaintiff-Appellant . . . failed to seek Mashpee Conservation Commission or Massachusetts Department of Environmental Protection approval **for a steel bridge to remedy the Island's admitted non-compliance with the Mashpee zoning bylaws where it had no frontage on a street which permitted public safety access to the property**." Appellees Brief, at p. 1 (Statement of Issues), p. 2, 4-5, 6 (construction of a bridge to provide frontage), pp. 16-23 (arguments about need to obtain a wetland permit), and p. 24 ("Nothing would then prevent Plaintiff-Appellant from thereafter filing a notice of intent for his steel bridge alternative, gaining approval either through the Mashpee Conservation Commission or Massachusetts DEP, building the bridge and a roadway and,

2

subsequently building a single-family residence on the Island in conformity with the Town of Mashpee zoning bylaws").

There is absolutely no factual basis for the argument that constructing a single lane bridge would eliminate the need for zoning variances or that a "roadway" bridge was ever proposed. Put another way, the District Court **never** concluded that Gooseberry might propose a bridge that would qualify as a street and provide frontage to meet the Mashpee Zoning Bylaw's requirements.[1] In the permitting proceedings before the Conservation Commission and Department of Environmental Protection ("DEP"), Gooseberry never proposed such a double lane bridge because it would be obviously futile. Rather, Gooseberry proposed a single lane bridge to reach Gooseberry Island which would be built of steel or wood. A. at p. 32 (Complaint at para. 137). It did so because the DEP expressed concerns that any bridge would have shading impacts on the saltmarsh and denied a single lane bridge over those concerns and pilings located in a salt marsh.[2] A. at p. 27 (Complaint at para.

---

[1] The district court found that the matter was not ripe because the permitting history did not demonstrate that the Massachusetts Department of Environmental Protection and the Mashpee Conservation Commission would not disapprove a bridge to reach the island and that the "there can never be a variance granted for the Subject Property, or that it would be futile for the Trust to seek a variance at the appropriate time." A. at 365 (*see also* Decision A. at pp. 351-366).

[2] Obviously, a two lane road would have greater shading impacts than a one lane driveway/access bridge.

3

107). Further, such a "street" to qualify as frontage would be impossible is to permit or construct as a "street" to the island as it would need to be forty feet wide and have 20 feet of asphalt and would obviously far greater impacts on wetlands than a single lane bridge.³

In summary, Mashpee and the ZBA's brief sets forth a wholly fantastical scenario, without any basis in the record or the District Court's decision, that Gooseberry was applying for (or could even realistically apply for) a forty foot wide two lane bridge so that it could have "frontage" on a street on the Island.⁴

---

³ *See* Mashpee Zoning Sec. 174-3 ("Street - A public way laid out by the Town under MGL C. 82, §21, or other authority or laid out by the state or county, which is open to travel by the general public and is on record at the Registry of Deeds, or a public or private way duly approved by the Planning Board under the Subdivision Control Statute, or a way on record at the Registry of Deeds which is approved by the Planning Board as a principal means of adequate access to abutting property.") *and* Section VII of the Mashpee Planning Board regulations requiring a minimum of 40 feet of width and 20 feet of pavement.

⁴ Similarly, Mashpee and the ZBA's brief implies without any support or citation (because there is none) that the wooden bridge was denied because of pilings in state wetlands and impacts on a shellfish grant (Brief at p. 2) when the permit was denied based upon impacts on salt marsh which are private tidelands located above mean low water. *See Home for Aged Women v. Commonwealth*, 202 Mass. 422, 427 (1909) ("The waters and the land under them beyond the line of private ownership are held by the State, both as owner of the fee and as the repository of sovereign power") and *Pazolt v. Dir. of Div. of Marine Fisheries*, 417 Mass. 565 (1994) (private tidelands are lands above mean low water).

## II. Mashpee and the ZBA Simply Ignore Established Case Law on Purchases Undertaken After a Regulation Is in Effect and Whether a Taking of All Economically Beneficial Use Has Occurred

Confusingly and incorrectly, Mashpee and the ZBA make the misleading argument that under the factors articulated in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978), Gooseberry could have no investment backed expectations given the existing regulatory framework at the time of Gooseberry's purchase of the Island. Appellees' Brief at pp. 34-35.

This argument is contrary to the holding in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), and its progeny. The Supreme Court has set forth "two categories of regulatory action that generally will be deemed *per se* takings for Fifth Amendment purposes. First, where government requires an owner to suffer a permanent physical invasion of her property, however minor, it must provide just compensation. A second categorical rule applies to regulations that completely deprive an owner of "*all* economically beneficial us[e]" of her property. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). "We held in *Lucas* that the government must pay just compensation for such "total regulatory takings," except to the extent that "background principles of nuisance and property law" independently restrict the owner's

intended use of the property. *Id.* No further factual inquiry is appropriate or required to ascertain if a taking has occurred where the regulations deprive an owner of all economically beneficial use of the property. "We think, in short, that there are good reasons for our frequently expressed belief that when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking. *Lucas v. S.C. Coastal Council, supra.,* at 1019.

As the Supreme Court has held, it is only when regulatory takings are outside of the *Lucas* categorical taking, that "regulatory takings challenges are governed by the standards set forth in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978)." *Lingle, supra at* 538-39 (2005). That is only in those cases where the owner retains some economically beneficial use of the property, then and only then, are such "regulatory takings ... governed by the standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104(1978)" which requires an examination to the "extent to which the regulation has interfered with distinct investment-backed expectations…." *Id.*

However, investment backed expectations are not the sole factor examined under *Penn Central* rubric. *Lingle, at* 538-539 (2005).

6

Specifically, to determine whether a restriction on property rights amounts to a taking, courts are to "balanc[e] . . . the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021). All three factors in the multifactor Penn Central test "should be taken into account" when determining whether a challenged regulation amounts to a taking. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984) *See Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017), quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (explaining that regulatory takings are to be evaluated based on "complex of factors" identified in Penn Central).

In this matter, Gooseberry's Complaint properly alleges (and the Town does not coherently disagree) that the Island cannot be developed for a single family home (the only allowed use under the Zoning Bylaw) without the issuance of a zoning variance. As such, by denying the zoning variance, the ZBA has deprived Gooseberry of all beneficial economic use of the Island.

Further, in *Palazzolo v. Rhode Island*, 533 U.S. 606, 621 (2001), the Supreme Court rejected Mashpee and the ZBA's argument concluding that that a "post regulation acquisition" did not

7

prevent a takings claim stating: "It suffices to say that a regulation that otherwise would be unconstitutional absent compensation is not transformed into a background principle of the State's law by mere virtue of the passage of title." *Id*. at 629-630.

Further, in making this argument, Mashpee and the ZBA again mislead the Court. Specifically, Mashpee and the ZBA state: "Haney's claim also requires we limit the definition of "economically beneficial uses" to only mean construction of a single family dwelling structure, a premise finding no support in any case law." Brief at p. 4. Mashpee and the ZBA do so when it is undisputed that the only allowed use in the applicable zoning district is single family residential. A. at p. 34 (Complaint, at paras. 146-147). As such, Gooseberry without a variance is left with land that it can only "look at."

In summary, Mashpee and the ZBA's argument ignores the holding in *Lucas*, fails to acknowledge that the *Penn Central* test involves multiple factors other than investment based expectations, and, finally, does not recognize that the mere existence of a regulatory requirement at the time of acquisition does not defeat a takings claim under *Palazzolo*. As such, the ZBA's argument is unsupported

8

by applicable law and, further, even if it was, would require factual development that is inappropriate for a motion to dismiss.

**III. Mashpee and the ZBA Wholly Ignore the Pakdel Decision In arguing that Further Applications Are Not Futile**

In their brief (pp. 18-24), the Town and the ZBA argue that further applications for a bridge are not futile. Quite incredibly, the Town and ZBA utterly fail to mention the United States Supreme Court's recent decision in *Pakdel v. City and County of San Francisco*, 594 U.S. __, 2021 WL 2637819 (2021), which sets forth the applicable standard as to when an appeal of a local land use decision as a taking is "ripe" for review. It is not like the decision was hidden from Mashpee and the ZBA as it is obviously addressed in Gooseberry's brief (pp. 9-12) in addressing whether Gooseberry's claim is "ripe" for review. The Court in *Pakdel* held that property owners did not have to exhaust administrative remedies and file multiple applications before seeking relief to satisfy a finality requirement for bringing a takings claim. All a plaintiff is required to do is demonstrate that the regulations at issue would apply to a parcel of land and that the outcome of the administrative process is nearly certain. Here, Gooseberry has twice applied for a variance from the ZBA and each time has been denied. Instead of addressing the denials by the ZBA, the ZBA and Mashpee argue that Gooseberry should be submitting applications

9

for a bridge permit when the denial of any application for a variance from the ZBA is a certainty.

**Conclusion**

The Complaint in this matter sets forth a comprehensive history in which Mashpee has actively fought every attempt of Gooseberry to obtain permits to develop the Island. At the same time, Mashpee has expressed a desire to maintain the Island as open space or conservation land. Mashpee may regulate the Island so that it is undevelopable but the United States Constitution prohibits it from doing so at the expense of Gooseberry. But the Appeals Court should not be hoodwinked by arguments that this matter should be remanded because Mashpee will possibly of issue development permits to Gooseberry.

Respectfully Submitted,

/s/Paul Revere, III

Paul Revere, III
I.D. No. 90623

Law Offices of Paul Revere, III
226 River View Lane
Centerville, Massachusetts 02632
(508)237-1620
revereiii@aol.com

Date: December 14, 2022

**CERTIFICATE OF COMPLIANCE WITH RULE 32**

 I, Paul Revere, III, certify that the foregoing Brief complies with the rules of court that pertain to the filing of briefs.

/s/Paul Revere, III

Paul Revere, III

**CERTIFICATE OF SERVICE**

 I certify that on December 14, 2022, I served this Brief by electronically filing it with a copy to Appellees' counsel of record.

/s/Paul Revere, III
Paul Revere, III

ADDENDUM

TABLE OF CONTENTS

Mashpee Zoning Sec. 174-3 ........................... 13

Mashpee Zoning Sec. 174-12 ..........................13

Mashpee Zoning Sec. 174-31 ..........................13

Mashpee Zoning Sec. 174-32 ..........................14

Mashpee Planning Board Regulations – Section VII..... 14

Mashpee Zoning Sec. 174-3

Terms Defined:

All present tenses shall include past and future tenses and all past tenses the present. All singular terms shall include the plural, and the plural the singular.

A. For the purpose of this chapter, the following words and phrases shall have the meanings or limitations of meanings herein defined.

* * *

"Street - A public way laid out by the Town under MGL C. 82, §21, or other authority or laid out by the state or county, which is open to travel by the general public and is on record at the Registry of Deeds, or a public or private way duly approved by the Planning Board under the Subdivision Control Statute, or a way on record at the Registry of Deeds which is approved by the Planning Board as a principal means of adequate access to abutting property.

Mashpee Zoning Sec. 174-12

No building shall be erected except on a lot fronting on a street, and there shall be not more than one (1) principle building on any residential lot, except as allowed under this chapter. For the purpose of adequate access to a parcel of land proposed for subdivision or division, there shall be required direct access from the parcel or lot to a paved town, county or state road or a street for which a road covenant has been released by the Planning Board or a street having a right-of-way layout and construction meeting at least the minimum layout width, pavement, drainage and other street requirements of the Mashpee Subdivision Regulations and Planning Board for subdivision streets.

Mashpee Zoning Sec. 174-31

Zoning Minimum Lot Size Minimum Lot

District Square Feet    Lot Frontage (ft)
R3 40,000.              150

Mashpee Zoning Sec. 174-32

To ensure that all buildings shall be accessible to Fire Department apparatus by way of access roadways capable of supporting firefighting apparatus with an all-weather surface roadway, there shall be an unobstructed, paved access roadway of not less than twenty (20') feet with a vertical clearance of not less than thirteen (13') feet six (6") inches with all corners having a minimum inside radius of not less than twenty-eight (28') feet and a minimum outside radius of not less than forty six (46') feet. Said access roadway shall be constructed to a point not less than one hundred fifty (150') feet from the furthest point of any building on the lot. Where there is a lot with only a one-family dwelling and/or a residential accessory building, such access, where it lies within the lot, may be by a maintained all-weather surface driveway, constructed by any combination and manipulation of soils, with or without admixtures, which produce a firm mass capable of supporting fire apparatus in all weather conditions and having an improved surface width of twelve (12') feet and a cleared width of sixteen (16') feet.


Mashpee Planning Board Regulations – Section VII

Section VIII
DESIGN STANDARDS SUITABILITY OF STREET SYSTEM

It is the intent of these regulations that streets designed in accordance with these standards will also be compliant with the design standards of the Town of Mashpee Department of Public Works as minimum design standards for acceptance as Town ways. No plan of a subdivision shall be approved unless the ways and streets shown on the plan comply with the following requirements:
A. Location and Alignment
1. All streets in the subdivision shall be designed so that, in the opinion of the Board, they will provide safe vehicular travel. Due consideration shall also be given by the subdivider to the attractiveness of the street layout, maintenance of existing drainage patterns to the extent practicable and the preservation of natural vistas or other important features of the area to be developed.
2. The street system shall conform to the master plan, if any, of proposed principal streets as adopted in whole or part by the Board.
3. Streets shall be continuous and in alignment with existing streets insofar as practicable.

4.  Provisions shall be made for the proper projection of streets, if adjoining property is not subdivided.
5.  The minimum center line radius of streets shall be one hundred feet except in cases where the Board believes a lesser radius is adequate. Greater minimum radii may be required, especially for minor collector, collector, arterial, commercial or industrial streets.
6.  Dead-end streets shall be provided at the closed end with a turn-around having an outside roadway diameter of at least one hundred feet, and a property line diameter of at least one hundred-twenty feet.
7.  Dead end streets shall not be longer than eight hundred feet unless, in ·the opinion of the Board, a greater length is desirable due to topography or other local conditions.
8.  Reserve strips prohibiting access to streets or adjoining property shall not be permitted, except where, in the opinion of the Board, such strips shall be in the public interest.
9.  Street jogs with center line offsets of less than one hundred twenty-five feet should be avoided.
10. Streets shall be laid out so as to intersect as nearly as possible at right angles. No street shall intersect any other street at an angle of less than sixty degrees.

B.  Width
1.  The minimum width of street rights-of-way shall be as follows:

| Street Type | Minimum Width |
|---|---|
| Minor Residential or Residential Access streets | 40 feet |
| Minor Collector or Collector streets | 40 feet |
| Arterial streets, | 50 feet |
| Commercial or Industrial streets | 50 feet or such greater width deemed necessary by the Board for present and future vehicular travel due to the proposed use. |

Other Streets To be considered on a case by case basis.

2.  Street lines at intersections shall be cut back so as to provide for a curb radius of not less than thirty-five feet

except in cases where the Board considers ft an alternate radius necessary.

3. Roadway pavement shall be constructed for the full length of all streets within the subdivision using the following minimum widths.

| | |
|---|---|
| Minor Residential Access Street | 20 feet |
| Residential Access Street | 20 feet |
| Minor Collector Street | 22 feet |
| Collector Street | 22 feet |

The Board may require greater pavement widths in any case where it is deemed necessary for public safety, where additional travel lanes are required or where on-street parking is proposed.

4. The center of pavements shall coincide with the centerline of the right of way insofar as possible but in no case shall it vary by more than four feet in either direction.

5. Where Cape Cod .Berms are used, the full pavement width shall be increased by two (2) feet